NO.    14-4302

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

Appellee,

v.

ROCCI WADE

Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

## BRIEF OF APPELLANT ROCCI WADE

PATRICIA VALENTINO KUTSCH
KUTSCH LAW OFFICES

RANDOLPH J. BERNARD
ROBERT H. MacWILLIAMS
ASSISTANT UNITED STATES
ATTORNEYS

Professional Building, 1300 Market Street
Suite 101
Wheeling, West Virginia 26003
Telephone: 304-232-8078

P.O. BOX 591
Wheeling, WV  26003
Telephone: 304-234-0100

*Counsel for* Appellant

*Counsel for* Appellee

# TABLE OF CONTENTS

Table of Authorities----------------------------------------------------------------i

Statement of Jurisdiction----------------------------------------------------1

Issues of law------------------------------------------------------------------2

Statement of the case--------------------------------------------------3 - 4

Argument

   A.     Issue 1--------------------------------------------------------5 - 9

   B.     Issue 2--------------------------------------------------------9 - 12

# TABLE OF AUTHORITIES

<u>Cases</u>

<u>Brady v. United States</u>, 397 U.S. 757 (1970)-------------------------------------------11

<u>Fox ex rel. Fox v. Elk Run Coal</u>, 739 F.3d 131 (4th Cir. 1-3-2014)------------------12

<u>Goodwin  v. Metts</u>, 885 F.2d  157 (4th Cir. 1989)-------------------------------------12

<u>State of West Virginia v. Boyd</u>, 108 W.Va. 234, 233 S.E.2d  710--------------------6

<u>United States v. Fisher</u>, 11-6781 (4th Cir. 4-2-2013)-----------------------------------11

<u>United States v. Loayza</u> , 107 F.3d  257 (4th Cir. 1997------------------------------5, 9

<u>Williams v. Zahradnick</u>, 632 F.2d  353 (4th Cir. 1980)---------------------------------7

<u>Statutes</u>

18 U.S.C. § 3231-------------------------------------------------------------------------1
18 U.S.C. § 3742(a)---------------------------------------------------------------------1
21 U.S.C. § 812(c)-----------------------------------------------------------------------1
21 U.S.C. § 841 (a)(1)-------------------------------------------------------------------1
21 U.S.C. § 841(b)(1)(C)---------------------------------------------------------------1
28 U.S.C. § 1291-------------------------------------------------------------------------1

<u>Constitutions</u>

<u>United States Constitution</u>,  Amendment V------------------------------------------6
<u>West Virginia Constitution</u>, Article III, Section 10-------------------------------------6

<u>Other Authorities</u>

<u>United States Sentencing Guidelines</u>, 4A1.1(d)-------------------------------------8, 10
<u>Federal Rules of Criminal Procedure</u>,  Rule 16(c)-------------------------------------11

## STATEMENT OF JURISDICTION

Appellant Rocci Wade was named with others in a nineteen-count indictment returned on July 9, 2013. Four of the counts specifically charged the appellant. Counts Fourteen and Fifteen were dismissed on motion of the government. Defendant was convicted by his jury of the two remaining counts, Count One, conspiracy to possess with intent to distribute oxycodone, a Schedule II controlled substance [21 U.S.C. § 812©), Schedule II(a)(1)] and Count Nineteen, distribution of oxycodone [21 U.S.C. § 841(a)(1) and (b)(1)©). The charges of which the appellant was convicted constitute crimes against the United States putting original jurisdiction in the United States district court: See 18 U.S.C. § 3231.

This is an appeal from the conviction and from the sentence imposed.

The appellant appeals pursuant to 18 U.S.C. § 3742(a) and this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

1

## ISSUES OF LAW

1.  Was there such prosecutorial error or misconduct during closing argument as to warrant new trial, to-wit:

    a.  Failure to protect defendant's fifth amendment rights by telling the jury that "this case has basically everything an investigation would have except what you don't have.  And that's a confession;" and

    b.  Stating to the jury an abbreviated and incorrect  substance and effect of portions of plea agreements contracted between co-defendant witnesses and the government, thus misleading the jury as to the consequence benefits to the witnesses to be gained by their cooperation and the consequences of failure of cooperation.

2.  Whether a critical part of the evidence of a key prosecution witness as to the earliest date of the appellant's drug trafficking was not disclosed to defense counsel prior to the testimony of that witness and should have been disclosed before commencement of trial.

# STATEMENT OF THE CASE

Rocci Wade was tried in January, 2014.  On January 31, 2014, the trial jury returned a verdict of guilty of two counts of the indictment,  Count One, conspiracy with intent to distribute oxycodone, a Schedule II controlled substance and Count Nineteen, distribution of oxycodone.  Two remaining counts were dismissed on motion of the Untied States prior to the commencement of trial testimony.  Soon before the Wade trial began, the four other persons also charged in the indictment had entered guilty pleas pursuant to plea agreements with the United States.  The defendant was represented by your undersigned counsel throughout the trial and thereafter.

After the verdict was returned the trial court recessed to allow defense counsel to prepare and file post-trial motions.  Counsel filed motions for judgment of acquittal and for new trial, presenting legal argument for the motions.  The arguments for new trial specifically addressed misstatements by the prosecutor in summation and closing rebuttal, the first of which violated the appellant's fifth amendment protections and the second misleading the jury as to the motivation of government witnesses.  After the government's response was received, the trial court denied defendant's motions and directed preparation of a presentence

3

investigation report.  The defendant filed five objections to the report all of which were overruled at sentencing on April 15, 2014.

The appellant also objects on appeal that a key witness for the prosecution, Isaac Stewart, testified that he had been purchasing oxycodone from the appellant since late 2007.  The consequences of that testimony led to two-level enhancement at appellant's sentencing.   The appellant had received the summary of an interview by police officers with Stewart on September 4, 2013, as pretrial disclosure, wherein Stewart  stated that " for at least the last two years he has purchased two to three pills daily from Rocci Wade."  This testimony was a surprise to the appellant and it later was proffered by the probation officer in his presentence investigation report as evidence of relevant conduct that the appellant had committed the instant offense while on probation for an unrelated offense from late 2007 through late 2009 and that therefore his sentence should be enhanced.

Defendant Wade was remanded to the custody of the United States Marshal Service and from there he was received by the Bureau of Prisons.  He is now serving the pronounced sentence of ninety-seven months' incarceration.  The defendant filed his Notice of Appeal to this Honorable Court on April 16, 2014.

4

# ARGUMENT

## ISSUE  1

**Standard of Review:**

1. Error, whether harmless; and
2. Plain error.

The guiding precedent in a question of prosecutorial error or misconduct is

United States v. Loayza, 107 F.3d  257  (4th Cir. 1997).

Loayza was convicted of mail fraud and appealed on several grounds.

Relevant to Appellant Wade's argument is the postit at Loayza, page 262, of

prosecutorial misconduct during closing arguments.  Defense counsel made

contemporaneous objection.  As in this appeal , Appellant's counsel in Loayza

also argued for the first time certain other improper remarks by the prosecutor.

At appellant Wade's trial during summation the prosecutor stated to the jury

(see Appendix, Tr. , p. 185):

> So I will finish now and just summarize for you, as I
> was thinking about this case last night, as I was preparing as
> to what I would say, and then I got up early this morning
> and did a little more thinking and talking to myself, I
> realized that this case has basically everything an

5

investigation would have, except what often you don't have.
And that's a confession.  Think about it.

Such a statement incites in the members of the jury panel the opinion that,

in the light of such evidence as the prosecutor claims it has against the defendant,

the defendant should have confessed.  References to an accused's failure to make

statements about his or her involvement in a criminal prosecution are direct

violations of the accused's rights under the fifth amendment to the United States

Constitution that no person shall be compelled in any criminal case to be a

witness against himself.  At defense counsel's objection, the trial court said:

> When I heard it, it certainly didn't raise in my mind any issue
> of commenting on his Fifth Amendment rights.  It's
> commenting on the evidence is perfect except for a
> confession.  I don't think it - - I don't see that as commenting
> on his failure to testify - - or his decision not to testify.  I'm
> going to overrule the objection.

Defense counsel then moved for a mistrial, which also was denied.  (See

Appendix,  Tr.,  pp. 187, 188).

It is a violation of Article III, Section 10 of the West Virginia

Constitution, and reversible error, for a prosecutor to comment on a defendant's

pretrial silence.  See State of West Virginia v. Boyd, 108 W.Va. 234, 233 S.E.2d

710 (1977).

This Court must now address whether the stated error of the prosecutor

6

was harmless.  Citing <u>Williams v. Zahradnick</u>, 632 F.2d 353 (4th Cir. 1980), at

page 361:

> An error is harmless only when the court, after
> assessing "the record as a whole to determine the probable
> impact of the improper evidence on the jury," can conclude
> beyond a reasonable doubt that the error did not influence
> the jury's verdict. [Citing cases.] Whether an error is
> harmless is established through a case-by-case
> determination, reached after weighing the prejudicial effect
> of the improper evidence against the probative value of the
> properly admitted evidence.  The variables  and the weights
> to be assigned them vary in each case.

The statement of the prosecutor was made at a critical stage, the government's

summation to the jury of all of the evidence they had heard and seen over the

preceding days of the trial, as viewed and outlined by the prosecutor.  Coming at

a point of conclusion of the prosecutor's summary, a direct reference to the

defendant's pretrial silence cannot be viewed as harmless but had the effect of

telling the jury that because of the weight of the government's case the

defendant should have confessed.

The second error of the prosecutor had to do with the attempts of the

defense to show that the witnesses had a motive to testify against the defendant.

Plea agreements offered by prosecutors are generally made of boiler- plate

language but are intended to protect both the government and the defendant to

7

whom such a plea agreement is offered.  The protection to the government, aside from a limitation on the right of the defendant to later appeal, is the strong-arm approach that the government takes in demanding of the person to whom the plea agreement is offered total cooperation, to whatever extent is demanded of him or her, and as the government wants.  This includes giving evidence at the trial of any co-conspirator or co-defendant.  The failure of any co-conspirator or co-defendant to whom such a plea agreement has been offered and accepted has dire consequences:  should the government choose to assert the same, it can rely on this clause in the plea letter:

> If, in the opinion of the United States, [the defendant] either engages in conduct defined under Application Notes 4 (A) through (K) of Guideline 3C1.1, fails to cooperate as promised, fails to make a truthful debriefing, is found to be deceptive during any polygraph, fails to testify fully and truthfully either at grand jury or any trial, fails to make the payment as set forth in paragraph 13 within the deadline contained therein, or violates any other provisions of the Plea Agreement, then the United States will not be bound to make the foregoing recommendations or take the foregoing actions and [the defendant] will not have the right to withdraw [her/his] guilty plea.

Plea Agreements, Appendix, pages 160, 166, 171.

It is incorrect and misleading for the prosecutor to sum up the effect of the agreement as not being helpful to the government other than an obligation

8

to testify truthfully.  In each instance of plea agreement referenced by defense counsel in cross examination, that of Julia Joseph, Diane Savage and Alisha Letts, the benefits gained by that promise to cooperate included in Julia Joseph's indictment included the dismissal of three criminal counts, in Alisha Letts's indictment the dismissal of eight criminal counts, and in the case of Diane Savage, the dismissal of an astonishing nine criminal counts, colossal benefits to each which should not have been misinterpreted and diminished to the jury.  This is plain error, simply and clearly, depriving the appellant of the right to show that the government's co-defendant witnesses were highly motivated to testify against the appellant.   Again, referencing <u>United States v. Loayza</u>, *supra*, at page 263:

> To reverse for plain error, we must: (1) identify an error; (2) which is plain; (3) which affects substantial rights; and (4) which "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."

## ISSUE  2

At defendant's conviction, the trial court ordered preparation of a presentence investigation report.  When the report was sent to appellant and to

his counsel, it included at its paragraph 56 [Appendix, page 32] "at the time the instant offense was committed, which includes any relevant conduct, the defendant was on probation . . . . Pursuant to U.S.S.G. § 4A1.1(d), two points are added."

At its paragraph 57 the probation officer who prepared the presentence investigation report said further, "total of the criminal history points is five. According to the Sentencing Table . . . five criminal history points establish a criminal history category of III."

According to paragraph 54 of the Report [Appendix, page 32], the appellant had pled guilty on November 1, 2007, to an unrelated misdemeanor and was sentenced among other things to "two years unsupervised probation, . . . ."

In pretrial discovery, appellant and defense counsel had been provided with a summary of the statement of Isaac Stewart, later a government witness, which was taken on September 4, 2013 [Appendix, page 202]. At that time or at the time of the interview according to the detective who conducted the interview, Isaac Stewart testified that he had "for at least the last two years" purchased oxycodone daily from the appellant. At trial Stewart moved the date from his illegal commerce with the appellant back to "late 2007." The effect

10

was to place the appellant, at sentencing, squarely within his period of probation when he first began commerce with Witness Isaac Stewart.

The appellant was prejudiced by this failure of the government to provide appellant with a true and accurate summary of the testimony expected to be elicited at trial.

Without a doubt, the prosecution prepared Isaac Stewart for his testimony; the prosecution had in its hands the report of the detective summarizing Isaac Stewart's criminal history with the appellant. The fact of the two-year disparity between Stewart's statement to investigating officers and his testimony at trial, or expected testimony at trail, could have caused the government to alert the appellant that Isaac Stewart had changed his version of his criminal relationship with the appellant can now only be imagined. Perhaps knowing of the potential for punishment the appellant may have chosen to take a plea offer from the government as it had offered all of the co-defendants. See Unites States v. Fisher, 11-6781 (4th Cir. 4-2-2013) for alternatives in light of full disclosure.

The remedy for this Court to take is to remand the appellant to the district court for re-sentencing. The failure of the prosecutor to adhere to Rule 16(c) , Continuing Duty to Disclose,  is impermissible conduct on the part of

11

the government.  See <u>Brady v. United States</u>, 397 U.S. 757(1970); <u>Fox ex rel.</u>

<u>Fox v. Elk Run Coal</u>, 739 F.2d 131 (4th Cir. 1-3-2014), "In a criminal case, the

government's duty to disclose under <u>Brady</u> arises from the obligation of the

prosecutor not simply to convict, but to see that justice is done;" <u>Goodwin v.</u>

<u>Metts</u>, 885 f.2d 157 (4th Cir. 1989), at p. 163: "[a]n abuse of process is by

definition a denial  of procedural due process . . .."  Therefore Appellant

respectfully asks the Court to grant this appeal and to grant him relief as is just

and appropriate.


Respectfully submitted,

Rocci Wade


By: <u>/s/Patricia Valentino Kutsch</u>
    Patricia Valentino Kutsch
    Kutsch Law Office
    Professional Building
    1300 Market Street, Suite 101
    Wheeling, WV 26003
    304-232-8078
    kutschlw@comcast.net


12

# CERTIFICATE OF SERVICE

I certify that on __July 16, 2014__ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Patricia Valentino Kutsch

Signature

July 16, 2014

Date